Good morning. Our first case for today is 2024-50113 Shane Vinales et al. v. AETC II privatized housing LLC et al. We'll hear from Mr. Rackley. Good morning, your honors. May it please the court. My name is Caleb Rackley and I, along with my partners and co-counsel, represent the Vinales family, the appellants. I know your honors know the facts and I just at the outset suggest, broadly speaking, that from a 30,000-foot level, they really can't be disputed. This case was tried as a bellwether. There's a nationwide epidemic of service members across the country and their families, including the Vinales' alleging that the most fundamental physiological needs, livable housing, is not being provided by privatized military housing landlords. Did you give us this? I did, your honor, yes. Is this part of the record? That is not, your honor. It is not part of the record. Have opposing counsel seen this and approved this for us to have this up here to us? They have seen them and I haven't heard an objection. Your honor, I received it this morning as to the court. I don't know that it's been filed. Okay. Okay. Thank you. You can continue with your argument. You bet. So the Vinales' are being deprived of livable housing by these privatized landlords and across the country, some of the people that are in the same position are able to rely on modern state law that was designed to protect tenants, but many other service members, including the Vinales' are surprised to find out that the law, according to some, treats them as veritable second class citizens and relegating them to obsolete law that provides little to no meaningful recourse. Appellees spend a lot of time in their briefing explaining all the things that they believe this court cannot do to solve an undeniable problem which indisputably exists. I would like to talk to this morning about the things that this court can do. We believe the briefing demonstrates that there are clear bases for reversing the lower U.S.C. Section 5001 as well as the denial of fees and exclusions of evidence, but it's the larger issue of the enclave doctrine which I believe most warrants this court's attention. So is the question whether 28 U.S.C. 5001B's personal injury exception to federal enclave doctrine's applicability to DTPA claims an issue of first impression in this circuit? Is the DTPA exception an issue of first impression in this circuit? I believe it is, Your Honor. I don't believe this court has spoken on that issue. And, you know, there's case law out there that we've discussed in the briefing that holds that personal injury includes injury to a person's mental well-being. You said this is the most important point, is the personal enclave, right? Can you take your time and walk us through why you believe it does apply? The enclave? Yes, that the DTPA exception doesn't apply, I guess I would say. Sure. Yes, that it could qualify. Sure, yes, Your Honor. So we believe that the exception that's in 5001 does apply, right? Does apply, personal injury. Yes, Your Honor. And, you know, the argument that appellees make is that it has to be either physical injuries and economic damages that are allowed as an exception or just physical injuries. And, you know, we don't see it that way because, and so what they say is, look, if economic damages are included in it, then what's the point of the two provisions, the two subsections of the statute? Well, that's not what we're saying. We're not making the argument that in any way economic damages apply under the exception. What we're simply saying is that there are physical personal injuries that apply, and that includes mental anguish. We're not arguing that economic damages apply. And so they spend a lot of time in their briefs saying, well, it makes no sense to have the death provision and the injury provision if it all applies, and that's not what we're arguing at all. Should we be asking the state what its views are on this as to whether or not personal injuries could be included? Your Honor, I mean, I suppose you could. I don't think that that's necessary because I think the state has spoken on that. I think the legislature has spoken on that and the courts. The state court, the Supreme Court of the state of Texas, I guess it would be. Well, again, so in Texas you cannot assert a stand-alone NIED, negligent infliction of emotional distress, or intentional infliction of emotional distress cause of action. And so the state, the courts, and the legislature have effectively said that personal injury and mental anguish apply. And so I don't think you need to assert. What case would say that? Give us your best case. Okay. If you don't have it handy, you can come back to it on your rebuttal. Can I get to that on the rebuttal? I would appreciate it if I could do that. Sure. You can proceed. What did you want to tell us? Well, I think that I guess just to sort of cut to the chase here, I please suggest that we are asking you to nix the enclave doctrine and, you know, say that it doesn't apply. And that is not what we're asking you to do, of course. Right? What we're asking you to do is narrow the application of the enclave doctrine to facts which, when that precedent was handed down, could have never been anticipated. We believe that courts, the Court of Appeals, have the right and the obligation to narrow precedent when new facts, new scenarios come up, that if the precedent was blindly applied, it would no longer serve the purposes of the precedent when it was originally handed down. And I think the classic or the best example that I'm aware of is the U.S. v. Wurie case, and I don't know if I'm pronouncing that right, but it's W-U-R-I-E from the First Circuit Court of Appeals in 2013. And prior to that case, the rock-solid precedent from the United States Supreme Court was in the form of U.S. v. Robinson. And it basically said that when officers stop an arrestee, that they could search the arrestee's pockets without a warrant. Okay? Well, and that was in 1973 or something like that. By the time 2013 comes around, there's a major change that has occurred that was never envisioned, and that's that virtually every arrestee is carrying a mini-computer around in their pocket in the form of a smartphone. And so the First Circuit said that had the Supreme Court been presented with that technological advancement when they handed down the precedent in U.S. v. Robinson, they would have never allowed a warrantless search of the smartphone because there's endless amounts of private and personal information in that phone. And so what the First Circuit did is they narrowed the precedent. They weren't empowered to set the precedent aside, but they narrowed the precedent, and they said we're going to make a narrow exception for smartphones that are in arrestees' pockets. Okay? What we're asking you to do is do the same thing. When the precedent that is today that we know as the Enclave Doctrine, as it was developed over decades and decades, the courts never envisioned, we believe, that the housing of America's service members would be managed and provided and repaired and maintained or supposedly maintained by private for-profit entities. That was a concept that was frankly unfathomable until maybe in the 80s when you sort of had a lot of privatization of government operations. But before then, it was just unthinkable. And so that's what you have now. And so we're asking the court to narrow the existing precedent with a very limited and tight exception. And if you'll indulge me for a minute, I would like to just read what we would propose word for word to you. Appellants ask this court to consider this exception. When a private entity is the sole source for the provision of a foundational physiological need, such as housing, for a service member residing on a federal enclave, current state law shall apply if the following three conditions are satisfied. One, there is a gap in federal law as to the provision of the foundational physiological need. Two, current state law addresses that need. And three, that current state law does not conflict with federal interests as to the same. What power do we have to do this that you're asking us to do this? I mean, we're not roving people that just try to make things seem fairer. So what authority do we have to do this? Sure. I believe you have the authority and the responsibility to do this, and I believe the evidence of that is in the Supreme Court's review of U.S. v. WURI, W-U-R-I-E. What they did is they affirmed the First Circuit's narrowing of the application of the Robinson precedent. And, in fact, if you read the opinion, and the opinion is actually, there were a couple of cases consolidated, so the opinion, I think, from the Supreme Court is styled wryly. But the court does two things that I think are very interesting. One, they give effectively a shout-out to the First Circuit, and they say that, and they quote the First Circuit's language favorably, where they narrowed the precedent, the cell phone exception. And the Supreme Court criticized other lower courts for having what the Supreme Court phrased as unduly mechanical interpretation of the precedent. And so we believe that this court has the right and the responsibility to not just mechanically apply existing precedent, as we believe the lower court did, but to apply it in a way that serves the purposes of the precedent. And the purposes of the Enclave Doctrine is to protect federal interests. To use the Enclave Doctrine, as Applebee's are asking you to do, to affirm the district court's holdings in this case, does not protect the federal government's interests. It undermines those interests. The Military Housing Privatization Act, which is the underlying statute at issue here that privatized the military bases, the housing of the military bases, that statute's whole purpose is to improve the quality of the housing. The idea was that private enterprise could do a better job improving the state of housing for service members. That's the purpose of the statute. The Enclave Doctrine is to serve, is to protect the federal government's interests. And so how does affirming the lower district court, the lower court's mechanical application of the precedent, protect the federal interest? We believe it does not. We believe it would absolutely undermine it. Can you help us with Mississippi River Fuel Corp. v. Cochraham, or however you say that, from 1967, a Fifth Circuit case? It says that you cannot say that a post-session state law is valid if it does not conflict with federal objectives. We've rejected that reading in our circuit, haven't we? And we have to follow the rule of orderliness such that we are bound by our decisions in 1967, aren't we? Well, here's the key, Your Honor, and it's a good question. Thank you. But the key is that the court struck down that severance tax in that case because it was not in alignment with the federal interest. The Buck Act allowed state income taxes, and that statute, that tax, this court said that is not an income tax, and therefore it was not in alignment with the federal interest as indicated or as evidenced by the Buck Act. So the key, and I think that's the key, is when you look at the precedent and you stand back and you look at it all together, you see that the Enclave Doctrine is all about whether the federal interests are going to be protected. And so, therefore, courts have often, in almost all of these decisions, they focus a lot on whether the state law or the state provision at issue is in alignment with federal interests. I have one question about the fraud claims. What is your best evidence in the record that there is something more than puffery in your fraud claim? So, Your Honor, when the Vanaleses were looking at the house, okay, and taking a tour of the house, the representative from Hunt, we're sort of putting all the entities together as Hunt, said, No, no, no, this is, this is, that's sort of, that smells normal. It's like grandma's house, okay. It is not normal for a housing unit to have ubiquitous mold that has been covered up time and time and time again with fresh paint, and then after the lease is signed, it begins to bleed through the paint and chip from the ceiling and make people sick and cause all kinds of problems. That's not normal. And so, had that been an honest representation, it would have said, the representative would have said, Oh, that smell, this house is old, and like grandma's house, that smell is mold. That is in old houses. That's what they could have said, but they didn't say that. Is it a part of your argument that that was fraud by material omission? Is that part of your argument? Absolutely, Your Honor, and Did you substantively brief that argument before this Court? We did, Your Honor, yes. We talked about how those statements, and I can point you to the exact page number, in the briefing, there's a little sort of a little chart, and we've got those statements, and then we talk about what was left out and what should have been said had material facts not been omitted. Would you like me to provide that page to you? You can come back with it on rebuttal, because I think you've gone way over time. Yes, Your Honor. Thank you. You've saved time for rebuttal. Thank you.  May it please the Court, my name is Russell Hollenbeck. I represent AETC and Haunt, the appellees, in this case. I'd like to begin by addressing the Worry case that my friend on the other side raised. This Worry, or Worry, however you pronounce it, has really nothing to do with this case. It's a Fourth Amendment case dealing with how broad a warrantless search can be. It doesn't address the federal enclave doctrine at all. This case, this Court has addressed the enclave doctrine and applied it in several cases, including the Mississippi River fuel case that Your Honor cited, Chief Judge Elrod, as well as the Lord v. Local Union case and the Morgan v. Rankin case. And that is really what needs to be applied here. Federal enclave doctrine does two important things. Number one, it makes sure that every area, no matter how small, that's under the control of the federal government, has some system of laws. And those are the local laws that exist at the time the land is ceded to the federal government for its exclusive control, its exclusive jurisdiction, and its exclusive congressional legislative authority. That has been consistently recognized by at least four circuits that we've cited in our briefing to the Court, as well as by the United States Supreme Court as recently as 2019. I didn't write down word for word the proposal that my friend on the other side raised to the Court as what should be the new rule. But I think if there's going to be a new rule under the application of the enclave doctrine, it needs to come from Congress and not from a circuit court or from a district court or even from the U.S. Supreme Court. It needs to come from Congress. And Congress has passed laws over the years to broaden things for employment claims. They've passed the, I can't remember the name of it, but it's essentially the All Crimes Act. State crimes can be prosecuted as those crimes are written in state law on federal enclaves. 5001 A and B was a statute passed by Congress to give persons on enclaves right to bring wrongful death claims or personal injury claims under state law to the extent that those claims are, in fact, personal injury claims. And as the Court discussed with my opponent regarding the DTBA claim, a DTBA claim is not a personal injury claim. And I don't believe the Court needs to certify that question to the Texas state courts because the cases that have already come out from the Texas Supreme Court and from other Texas courts make clear that DTBA is for consumer and economic injuries. And again, yes, ma'am. What is the best case on that? Because I saw that there was a first court of appeals case, but I did not see a Supreme Court case. And while the first court of appeals could be persuasive authority, it's not binding. So what is the best Supreme Court case that you think establishes this if there is one? Sure. I would direct the Court to PPG Industries versus JMB Houston. That's a Texas Supreme Court case from 2004. I believe that's in our briefing, but I can give the Court the side, 146 Southwest 3rd 79. And also the text of the DTBA itself in Section 17.44, you know, the mental anguish component is really a punitive component sort of on the back end of a DTBA claim. But DTBA is not. I mean, you know, Texas courts have been having a thing about punitive damages versus damages that are like mental anguish and pain and suffering. And so I don't think that could be called punitive. Well, it requires an elevated showing of knowing and deliberate consumer fraud and consumer activities. And also keep in mind the DTBA statute was passed well after this land was ceded to the U.S. government, which was in 1951. So if it's going to apply at all under this elevated standard, then it would have to be under some kind of exception, which they point to 5001B, which is the congressional statute allowing personal injury claims. But the courts that have looked at that, you know, there's a dispute. There's a, I wouldn't say a circuit split. There's a district court level split as to what is a personal injury claim. There's a couple that go either way. There's a District of Puerto Rico case. There's a Southern District of California case that say personal injury means physical injury. It does not mean mental distress. And, again, there's no holding from this circuit as to what is a personal injury. Well, I would say it's persuasive. If you look at what is a personal injury. And, again, plaintiffs waived, in this case, any claims for physical personal injuries. Well, mental injury is a personal injury, isn't it, in a lot of courts? In some courts, yes. In some courts, no. But the question is what can you recover, in what circumstances can you recover mental anguish as a damage? And there's clear Texas common law, for example, City of Tyler v. Likes, that say when you're talking property damage only, mental anguish is not recoverable. And that's essentially what the claim is here. It's economic damages only for difference of value of rent and personal property damage for furniture and other personal items that were in the home that they say were lost. So there's no physical injury component to their damages claims at all because they gave those up. Can we back up to the point that you think Congress needs to take on, if they're going to, the idea that these are all privatized for profit, running all these housing units? Sure. These companies are, there's a lot of oversight by the Department of Defense already as part of the Military Housing Project Initiative, the MHPI. There is, for example, in this particular case, the U.S. Air Force reviews all the contracts and all the lease documents that go to the military servicemen and women. And there's reporting that hunt companies and whatever are the different companies on enclaves that take care of these homes and maintain these homes have to report to the government. So there's a great deal of oversight that's already in place. And if there's going to be some sort of rule change or some exception created, then that needs to be taken to Congress who can create an exception similar to 5001 A and B. So what is the oversight that would say if there's mold that it doesn't have to be, that it has to be cleaned up or that you can't lease to servicemen or members? Well, there are clear terms in the lease agreement that talk about the obligation of the lessor and the tenants in this case. And they proceeded on a claim of breach of contract, which is what the district court found was supported under application of the Federal Enclave Doctrine, their breach of contract claim. And they prevailed on their breach of contract claim. And they recovered all of the economic damages they were seeking under that breach of contract claim. But I thought you said it was also regulated by the federal government such that there should be – it's not just a contract between the two parties. It's the government overseeing to make sure that this is habitable. Well, what I was saying was the government oversees each of these private entities that operates and maintains housing on the Federal Enclave. And so they review all the documents. There are monthly reports that have to be sent to the government. Does the record contain reports showing that this was not habitable, that the government was aware or anything like that? I do not believe there's any records that show the government was somehow aware that the house was not habitable. But there are many, many repair reports that are in evidence where Hunt or AETC and its representatives went out to make repairs for different things to the home. And all of those reports are in evidence. And the analysis confirmed in their testimony that, yes, those show all the reports of the repairs that were made. What about the comments made at the walkthrough that we were talking about earlier? That the house is old, that it smells like Grandma's house? It's not disputed. Well, that it's not just that it's old, but that it allegedly has mold, that it was not revealed. If you were buying a house under Texas law, you would have to check off these boxes, and you would be in big trouble if you didn't reveal that it had mold, especially if somebody made an inquiry. I understand your question. There was not an inquiry at the time about whether there was any mold in the house. Isn't that an inquiry? There's not any evidence. What is this smell, and the smell is mold? No. That's a misstatement of the record. The comment was this house smells musty, and the agent said, well, it's an old house. It smells like Grandma's house. There was no misrepresentation to the analysis that the house has never, ever had any issue with mold. There was no evidence that the house had mold in the house at that time. There's no evidence of that. There's no evidence of mold in this house. There's no evidence of mold in this house at the time of the walkthrough when they say the statement was made. There was a treatment for mold later in the house. The house was remediated, and after the house was remediated by experts, it was shown to the analysis that there was some evidence of mold on, I think, a chest of drawers and on a yoga mat. Everything else was done by experts to the highest standards, and there was no evidence of any mold after that. And so there was no statement about mold at the time of the walkthrough. Do you have something else you want to add? Sure. I thought you might have another question. No. I mean, I probably do, but my colleagues might also have questions, and I'm going to be quiet and listen to you for a while. That's fine. That's fine. So I just wanted to say that, you know, wrapping up this issue about, you know, who can pass a new rule for the enclave doctrine, I would just say it's not for this court to do. That is something that if there's going to be a broadening of the rules or a broadening of the application of what laws apply on an enclave, that has to come from Congress. The other argument that my friend raises in the briefing is with regard to choice of law and what law applies based on the documents that were signed in this case, and it's quite clear to us that from the language in the lease, what applies is exactly the law that was applied by the district court in this case, and that is precession Texas law. They point to a provision in the lease which says the parties shall resolve the dispute in accordance with local applicable laws. That is, in our view, not a choice of law provision that would apply current Texas law to the dispute. Why not? Well, because it doesn't actually say what it needs to say to do that. But first of all, I think we need to step back and realize that this is a federal enclave where there's exclusive federal jurisdiction and legislative authority. Absent a voluntary relinquishment of its sovereign rights, the federal government exercised exclusive jurisdiction over the federal enclaves, and that's not my writing. That's this court's writing from the United States v. Texas case that we cite, Fifth Circuit of 1983. There's not a statute that authorizes private parties to waive exclusive federal jurisdiction over an enclave or exclusive federal authority. So to say that two private parties can, in a House lease agreement, sort of waive around federal jurisdiction I think goes way too far. There's certainly not a case that I've seen that approves that. There are three district court cases from the same district judge in North Carolina that analysis cite for the idea that parties can contract around that jurisdiction by choice of law, and that was in North Carolina, as I said. And the leases in those cases had a much more elaborate language. So assuming you could even do that, which I don't think you need to get to that broader question, it would take much more than a simple phrase of local applicable law. In that case, they talked about the substantive laws of the state of North Carolina, including but not limited to North Carolina general statutes, Chapter 42, and the common law interpreting those statutes. Again, I'm not agreeing with that district court that one could do that, but it's much more than just this. There's another case. There's another part that says landlord further agrees to comply with all applicable building and housing code requirements governing residential rental property in the state of Texas. That's a little more specific than in accordance with local applicable laws. Well, and that refers specifically to building codes. And there's not a – And housing codes. And housing codes. Well, there's – that doesn't specify anything beyond those two things. And, again, I'm not sure – and we dispute the idea that one can contract around federal exclusive jurisdiction by that – by such a phrase. But it doesn't relate to the claims that they're making here because they're making common law, fraud, and breach of contract claims. They haven't cited two provisions of housing or building codes that they relied on as even giving them a private cause of action in this case. But in any event, they don't rely on those either in the lower court or in this court in their briefing. But I would also direct the court to the Fisher case from the state of Virginia, district court judge in the eastern district, who looked at an agreement that said the tenant-landlord relationship created by this agreement is in accordance with the laws of the commonwealth in Virginia. And that judge said, well, that's not enough of a choice of law to clearly enact or clearly agree to contemporary Virginia law. Again, even assuming one could do that. And that judge certainly found that it was a debatable issue about whether one could privately contract around exclusive jurisdiction. Finally, on this issue, there's a case – and I'll file a 28J letter on this case – but the case I found this weekend looking at this issue called Eide v. Michaels Management Services out of the Middle District of Florida from just this past March. Similarly, that judge looked at a contract that said the rights of the parties will be interpreted in accordance with the laws of the state of Florida. And that was dealing with MacDill Air Force Base in Florida. And the judge said that's not enough to contract around federal jurisdiction and exclusive congressional authority. So I think it's certainly not a settled issue that one can even do that. But again, I don't think you need to get there because this contract doesn't go far enough as these other contracts did in those other cases. Can you talk about the Tarny's fees claim? Certainly. The fees claim is an interesting one because on appeal they rely on – and we don't think they're entitled to any fees. So I'll give you the ending up front. But the reason is because the statute they cite, which was after the summary judgment was already granted, the statute they rely on is 2226, which was kind of the predecessor statute to Chapter 38 of the Civil Practice and Remedies Code that allows for recovery of attorney's fees. The problem with that older statute for my opponents is that it doesn't authorize recovery of fees for breach of a lease or breach of a contract. It authorizes recovery of fees against persons or corporations and only for things like personal services contract or delivery of materials and goods, which this is not. This is a breach of a landlord-tenant lease agreement. So you believe that they are not entitled legally separate and apart from the timing issue? Correct. I think timing is a problem for them. It's very common to wait until after the summary judgment. If we were in Texas court, you wouldn't deal with that until after the fact as long as you put it in your complaint or your petition.  This is not too late in any regular Texas type of proceeding. And I understand this is not a Texas proceeding, but this is very common, the timing. I don't think it's uncommon at all, and I'm not trying to ding them on the timing, but I'm just saying on the merits, they can't get there because the statute they're looking at doesn't get them what they want. It doesn't authorize fees against anyone other than a person and a corporation. And Your Honor will recall, we are not a person or a corporation. My clients are LLCs or limited liability companies. And so under the words of the statute, it literally doesn't apply. And again, the corporate entities that are my clients didn't come into being until well after session. But it's a consistent issue even under the current law, Chapter 38 of the Civil Practice Remedies Code, which had to be amended a couple of sessions ago, I believe in 21, to allow for recovery of fees against limited liability companies and LLCs. Because that statute even still said persons and corporations. And so the legislature said, well, we need to fix this, and we need to make fees recoverable against all business organizations. But again, they didn't do that until just a few years ago. So even under the modern statute, given the time when they filed their lawsuit, even if you'd applied Chapter 38 to this, they couldn't recover fees against my clients. So I think that hopefully answers the Court's question. But I would just like to say, you know, unless the Court has more questions, I would just like to wrap up by saying my clients take their partnership with the military community and the Department of Defense and the United States Air Force and their responsibilities under those partnerships very seriously. I and my clients respect and thank all military servicemen and women for their faithful service to this country. We respectfully ask that unless the Court reverses and renders judgment in favor of my clients, that you affirm the judgment of the Court below. Thank you. We appreciate your argument. Thank you. Mr. Rackley, you've saved time for rebuttal, sir. Thank you, Your Honor. Your Honors, as to the question about the fraud arguments, in the opening brief, appellant's opening brief, page 41, generally in section 4C2, that's discussed. And then those omissions you can find in the record at, for example, record page 19816, paragraphs 7 and 8. Those omissions appear in the record. I also wanted to go back just real quick to the 5001 issue, and I apologize if I was not clear. What they are arguing, so 28 U.S.C. 5001 makes an exception that says even on enclaves where there's exclusive jurisdiction, these types of claims will have current law applied to them. And it talks about one, death, and two, death claims and two, personal injury. What they, they misconstrue our argument somehow as if we're saying that also, again, economic damages would be involved, would be under the definition or the term, the heading personal injury. We're not saying that at all. We're simply saying, so economic is out of the picture. We're simply saying that personal injury is, encompasses the mental injury of mental anguish. And you asked for cases. So, Your Honor, so Texas law does, so let me just back up one second. The district court said, one of the reasons the district court said that 5001 does not apply is because it looked at some of the other cases from outside of Texas, but other, you know, persuasive authority that said 5001 does apply to mental anguish. And it said that in those cases, the claimants asserted a claim for a stand-alone mental anguish injury. Since we didn't do that, 5001 doesn't apply. Well, we couldn't do that, okay? Your Honor, SCI Texas Funeral Services versus Nelson, Texas Supreme Court 2018, makes it very clear that negligent infliction of emotional distress is not recognized as a cause of action in Texas. That's also, you know, the famous Twyman v. Twyman case. And then, as far as any kind of intentional infliction of emotional distress claims, Hoffman, LaRoche, Incorporated v. Zeltwanger, 114 Southwest 3rd 438, Supreme Court 2004, says that the intentional infliction of emotional distress is solely a gap filler tort, if you will, if there's no other ability to have recourse. This classic example is, I think there's a secretary in an office, and she's being chewed out so unbelievably ridiculously that in that case, maybe she has a claim for intentional infliction of emotional distress because there's no other claim. The guy didn't spit on her, he didn't assault her, anything like that, okay? So those things don't apply here. So here's what the district court is saying, okay? When Congress made an exception in 5001, they didn't intend for it to apply in all 50 states. Well, how can that be? If the Enclave Doctrine applies in all 50 states, of course it does, if the Enclave Clause is in the Constitution, applies to everybody, then how can the exception only apply in certain states like Washington but not apply in Texas? The exception to the national 50-state rule has to apply in all jurisdictions. And so, again, what we're saying is that mental anguish is a personal injury. But you don't have a mental anguish claim. So what is your personal injury claim? I understand that you can't have a freestanding. You're absolutely right, you can't have a freestanding claim. Got it. But what is your personal injury claim then that would apply? It's the mental anguish that was suffered and is actionable under the DTBA as an exception because of 5001. As to the question of Congress, first of all, we would never sit here and argue, of course, and we're not, that the Supreme Court precedent is wrong. But I would argue maybe that the whole ex post facto clause and it only applies to criminal cases, I would argue that maybe that case from 1798 was wrongly decided. But here's the key, is regardless, there are clear policy problems with an ex post. You've got to wrap it up. I'm sorry, Your Honor. Congress can't do this retroactively, and that's why they haven't. But if you look at all the language that they've added to the MHPI recently and the Tenant Bill of Rights, it's a signal that they think that current law should apply. But they can't fix it because there's case law that would basically put the United States at risk of abrusive contract if they suddenly change the law, say 25 years ago, a contract that was entered into, we're now going to change the law. But what this Court can do is make an exception and effectively say that never was the law. It never was the law that the enclave doctrine is going to deprive certain service members of any meaningful recourse and allow others to have the benefit of current law. That can't be the law, and that never was the law. And that's what we're asking this Court to do via a very narrow exception that I've articulated. Thank you. We have your argument. Thank you, Your Honors.